JOHN T. YOUNG,

     Plaintiff,

v.                                            Civ. No. 16-1024 GJF

NANCY A. BERRYHILL, *Acting
Commissioner of the Social Security
Administration*,

     Defendant.

## ORDER

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse or Alternatively Remand for a Rehearing, With Supporting Memorandum" ("Motion"), filed on May 1, 2017. ECF No. 16. The Commissioner responded on June 20, 2017. ECF No. 18. Plaintiff replied on July 14, 2017. ECF No. 19. Having meticulously reviewed the entire record and the parties' pleadings, the Court finds that Plaintiff's Motion is not well taken and that the Administrative Law Judge's ("ALJ's") ruling should be **AFFIRMED**. Therefore, and for the further reasons articulated below, the Court will **DENY** Plaintiff's Motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's background has been well documented through the two previous Orders issued by U.S. Magistrate Judge William P. Lynch. *See* Order, Mar. 19, 2012, at 3-11, ECF No. 27, 11-CV-478-WPL; Order, Mar. 18, 2015, at 4-11, ECF No. 24, 14-CV-346-WPL.[1] In short, Plaintiff was born on June 3, 1971, and attended school until the eleventh grade. Administrative R. ("AR") 1047-48. Plaintiff attempted to obtain his General Equivalency Diploma ("GED"), but was unable to do so. AR 375. He worked in various janitorial, landscaping, and stocking jobs

---

[1] Judge Lynch's opinions also appear as part of the administrative record in the instant cause. *See* AR 406-29, 1504-18.

from 1993 to 2004, and then worked from 2005 through June 2008 as a janitor and supervisor. AR 187. In 2007, Plaintiff began a decade-long treatment relationship with the University of New Mexico Health Sciences Center, where he consistently sought treatment for his alleged chronic low back pain and pain radiating down his legs, even as his treatment was sometimes complicated by drug seeking behavior. AR 1453.

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on March 27, 2008, claiming disability based on "back and leg problems." AR 100-15, 244. Plaintiff initially claimed disability starting in 2007, but amended his alleged onset date to July 1, 2008, during his first hearing before an ALJ. AR 26-27. The Social Security Administration ("SSA") denied Plaintiff's application initially on June 3, 2008, and upon reconsideration on October 17, 2008. AR 52, 58. Following a hearing on November 6, 2009 [AR 23-47], ALJ George Reyes found that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). AR 10-19. The SSA's Appeals Council declined review. AR 1-5. Plaintiff sought judicial review of the decision, and on March 19, 2012, Judge Lynch remanded the case based on a step five error. AR 406-29.

Plaintiff received a new administrative hearing before ALJ Ann Farris on September 25, 2013. AR 358-89. ALJ Farris, like ALJ Reyes before her, found that Plaintiff was not disabled for purposes of the Act. AR 337-51. Plaintiff again sought judicial review of the agency's final decision, and on March 18, 2015, Judge Lynch remanded a second time for further proceedings. AR 1504-18. On this occasion, Judge Lynch remanded for ALJ Farris's failure to support a medical evaluation with substantial evidence, and for failing to properly evaluate a separate medical opinion under SSA standards. AR 1516-18.

Plaintiff attended his most recent administrative hearing before ALJ Farris along with his attorney, Michael Armstrong, on March 30, 2016. AR 1469-92. Vocational expert ("VE") Karen Provine also appeared and testified at the hearing. AR 1488-91. On May 17, 2016, ALJ Farris reiterated her finding that Plaintiff was not disabled for purposes of the Act. AR 1446-61.

Plaintiff filed an appeal with this Court on September 14, 2016. ECF No. 1.[2]

## II.   PLAINTIFF'S CLAIMS

Plaintiff advances three grounds for relief. First, he argues that ALJ Farris violated the mandate rule by failing to comply with Judge Lynch's instructions. Pl.'s Mot. 16-18, ECF No. 16. Second, he contends that ALJ Farris erred by failing to properly evaluate the medical opinion evidence of consultative examiner Dr. John Vigil, M.D. *Id.* at 18-22. Third, he alleges that ALJ Farris ignored the findings of non-examining consulting psychologist Carol Mohney, Ph.D. *Id.* at 24-26.

## III.   APPLICABLE LAW

### A.  Standard of Review

Because Plaintiff elected not to seek review by the Appeals Council, the ALJ's decision became the final decision of the agency.[3] The Court's review of that final agency decision is both factual and legal. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.").

The factual findings at the administrative level are conclusive "if supported by substantial

[2] Because this case was remanded by the U.S. District Court, Plaintiff elected to forgo an appeal to the Appeals Council and instead proceeded directly back to this Court. *See* 20 C.F.R. § 404.984(a) & (d) (2015).

[3] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision. 20 C.F.R. § 404.981 (2017); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

evidence." 42 U.S.C. § 405(g) (2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Substantial evidence does not, however, require a preponderance of the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court examines "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

### B. Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2017). At the first three steps, the ALJ considers the claimant's current work activity, the medical

severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App. 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of his past relevant work to determine if the claimant is still capable of performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing his past work, then he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to his past work, then the Commissioner bears the burden at the fifth step of showing that the claimant is nonetheless capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## IV.    THE ALJ'S DECISION

ALJ Farris issued her second decision in Plaintiff's case on May 17, 2016.[4] AR 1444. At step one, she found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of June 30, 2008. AR 1448. At step two, ALJ Farris found Plaintiff

---

[4] Her decision also represented, along with her prior decision and ALJ Reyes's decision, the third ALJ decision overall in Plaintiff's case.

to suffer from the following severe impairments: (1) degenerative disc disease of the lumbar spine; (2) lumbar radiculopathy; (3) an affective disorder; (4) an anxiety disorder; and (5) polysubstance abuse. AR 1449.

At step three, ALJ Farris found that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 1450-52. ALJ Farris began her analysis with Plaintiff's spinal impairments, and found that Plaintiff's symptoms did not meet or equal the criteria of Listing 1.04 for disorders of the spine. AR 1450.[5] To reach that determination, she relied on the opinions of the non-examining consulting physicians who "reached the same conclusion" as she did, along with Plaintiff's long history of physical examinations. AR 1450. By ALJ Farris's account, Plaintiff's examinations generally showed stable spinal findings, "including positive facet loading signs with diminished range of motion and lateral flexion and point tenderness at the base of the lumbar spine." AR 1450. ALJ Farris reasoned that Plaintiff's examinations "have not consistently shown any difficulty with ambulation, positive straight leg raising, or motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss, as

---

[5] At the time of ALJ Farris's decision, a claimant could only be found presumptively disabled under Listing 1.04 if the claimant had a disorder of the spine resulting in the compromise of a nerve root or the spinal cord, in addition to one of the following:

    A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

    B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

    C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04 (2016).

required by section 1.04." AR 1450. These findings aligned with Plaintiff's most recent examination, where "[t]here was no mention of any gait abnormality or motor or sensory deficit," and ultimately led ALJ Farris to find that Plaintiff did not qualify under Listing 1.04. AR 1450.

ALJ Farris then turned to Plaintiff's mental impairments, which she scrutinized under Listings 12.04 (affective disorders), 12.06 (anxiety related disorders), and 12.09[6] (substance addiction disorders). AR 1450. She found that the paragraph B criteria of Listings 12.04 and 12.06[7] were not met "[b]ecause [Plaintiff's] mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." AR 1451.

ALJ Farris found that Plaintiff "has mild restriction in activities of daily living; moderate difficulties in social functioning; mild difficulties with regard to concentration, persistence or pace; and no episodes of compensation." AR 1450. In support of her findings, ALJ Farris provided a summary of Plaintiff's testimony, including his statements that he: (1) lives in a shack with no utilities; (2) has a driver's license but no car; (3) has problems bathing because he lacks water; (4) receives food stamps and gives them to his friend to go grocery shopping; (5) does not do anything for fun; (6) cannot be around people; (7) sleeps poorly; and (8) is always angry. AR

---

[6] Although ALJ Farris claimed to analyze Plaintiff's impairments under Listing 12.09, there is no evidence in her decision that she did so. Nonetheless, Plaintiff has alleged no error in her failure to follow through with this evaluation, and therefore the Court will address the issue no further.

[7] Paragraph B of Listings 12.04 and 12.06 (which was identical at the time in both) describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations must be the result of the mental disorder described in the diagnostic description. To meet either of these two Listings, a claimant must exhibit at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

*Id.* §§ 12.04(B), 12.06(B) (2016). On March 27, 2017, the SSA significantly altered the language of these listings.

1451. She then highlighted "evidence of record" which she believed contradicted Plaintiff's claims. *See* AR 1451. To that end, ALJ Farris marshaled facts from throughout the record, with particular focus on the fact that Plaintiff first reported his depression in 2011, after his girlfriend of five years left him. To ALJ Farris, this harmonized with the fact that Plaintiff's last job was in management, "which suggests at least adequate people skills." AR 1451. Moreover, ALJ Farris felt that Plaintiff's ability to carry on social relationships was bolstered by Plaintiff's 2013 admission that he had partied with a friend newly returned from Iraq. AR 1451.

The second prong of ALJ Farris's reasoning derived from the consultative psychological examinations of Susan Flynn, Ph.D. and Dr. Brent Hager, M.D. ALJ Farris observed that Plaintiff presented in 2012 to Dr. Flynn with good eye contact, a friendly attitude, the ability to attend to the examination, and the ability to follow directions. Plaintiff's thought processes at that time were organized and logical, their content appeared to be normal, and their "quality was mostly appropriate but he related feelings and moderate symptoms of anxiety and depression." AR 1451. Plaintiff's consultation with Dr. Hager in 2014 produced similar findings, with Dr. Hager opining that Plaintiff's affect was "congruent, anxious dysthymic with range to tearfulness, dysphoria, and irritability." AR 1451. Plaintiff demonstrated appropriate humor and intact associations, and displayed no psychotic features. And, although Plaintiff's remote autobiographical recall, fund of knowledge, insight, and judgment were all rated as poor, Dr. Hager did note that Plaintiff showed "adequate conversational orientation, attention, concentration, recent autobiographical recall, and language." AR 1451.

Considered in tandem, these observations led ALJ Farris to find that the paragraph B criteria were not satisfied. ALJ Farris also considered whether the paragraph C criteria of

Listings 12.04 and 12.06 were satisfied, and found that "the evidence fails to establish the presence of the 'paragraph C' criteria." AR 1451.

Because none of Plaintiff's impairments satisfied an applicable Listing, ALJ Farris proceeded to step four and assessed Plaintiff's RFC. AR 1452-59. "After careful consideration of the entire record," ALJ Farris determined that "[Plaintiff] has the residual functional capacity to perform sedentary work" as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) "except that he can occasionally climb stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, and kneel; never crouch or crawl; and have no more than occasional superficial[ ] interaction with the public and coworkers." AR 1452.

To develop Plaintiff's RFC, ALJ Farris relied on two principal grounds. First, she rendered an adverse credibility finding against Plaintiff, opining that his "medically determinable impairments might be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 1453. She supported this credibility finding with a comprehensive comparison between Plaintiff's alleged symptoms, their relationship to his substance abuse problem, and the conflict of these symptoms with numerous presentations before medical professionals. AR 1453-57. Furthermore, ALJ Farris documented the interplay between these factors through a meticulous review of Plaintiff's medical documentation from 2007 all the way to 2016. AR 1453-57. ALJ Farris's well-reasoned credibility finding has drawn no objection from Plaintiff.

Along with Plaintiff's adverse credibility finding, ALJ Farris relied on the medical opinions of record to craft Plaintiff's RFC. Chief among these was the opinion of Dr. Harvey Mallory, M.D., a physician with the University of New Mexico Hospital's ("UNMH's") Pain

Management Clinic. Dr. Mallory began treating Plaintiff for spinal pain in February 2008. *See* AR 272, 704. ALJ Farris reviewed a letter from Dr. Mallory in 2008, wherein he opined that Plaintiff could no longer work as a janitorial supervisor because the employment involved significant amounts of heavy lifting, bending, stooping, and carrying of heavy objects. AR 1458. ALJ Farris highlighted, however, that the letter "did not set forth specific limitations and did not rule out the possibility of [Plaintiff] performing less strenuous work." AR 1458.

ALJ Farris also evaluated a July 23, 2008, request for family leave propounded by Dr. Mallory on Plaintiff's behalf. She observed that the request mentioned Plaintiff's chronic condition being present from 2004 to the time of the request, and that the request referred to Plaintiff as being "'presently incapacitated' for 'duration unknown.'" AR 1458 (quoting AR 171). ALJ Farris took exception with these conclusions, and rebutted them by noting that Plaintiff "continued to work full time as a cleaning service supervisor from 2004 to 2008, [and thus,] clearly had not been incapacitated since 2004." AR 1458. ALJ Farris further emphasized that Dr. Mallory had completed a medical leave form for Plaintiff, rather than a disability form, which she interpreted as "suggesting that Dr. Mallory expected [Plaintiff] to improve with treatment and return to work." AR 1458.

By examining later treatment notes of 2009 and 2010, ALJ Farris believed Dr. Mallory to be "encourag[ing] [Plaintiff's] activities toward improving his employment situation," which Dr. Mallory hoped would be in a field "that require[d] less physical activity." AR 1458 (quotation omitted). ALJ Farris ultimately accorded great weight to Dr. Mallory's opinion, but only to the extent Dr. Mallory believed Plaintiff "would not be able to return to his past strenuous work as a cleaning service supervisor (which also required cleaning offices), but that he was capable of performing other, less strenuous work." AR 1458.

ALJ Farris next turned to the opinion of Dr. John Vigil, M.D., who performed a consultative examination of Plaintiff on September 12, 2013, at the request of Plaintiff's attorney. In sum, Dr. Vigil found that Plaintiff "is totally and completely disabled secondary to his chronic pain and co-morbid psychiatric conditions." AR 1255. ALJ Farris discounted Dr. Vigil's opinion, and the rejection of his opinion forms the greater part of the instant appeal. Accordingly, Dr. Vigil's opinion will be reviewed in detail below. *See infra* pp. 13-23.

ALJ Farris also assigned "limited weight" to the opinion of Dr. Susan Flynn, Ph.D., who performed a consultative psychological examination of Plaintiff on August 1, 2012. AR 1449, 1459. At that evaluation, Dr. Flynn diagnosed Plaintiff with a "major depressive disorder, recurrent, moderate, and a generalized anxiety disorder." AR 1449. Plaintiff related to Dr. Flynn "that he became depressed in 2011 when his girlfriend of five years left him." AR 1451. Plaintiff also reported that he smoked marijuana for his pain, "and when he doesn't smoke he can get upset." AR 1048. Dr. Flynn documented that Plaintiff's affect seemed "to be constricted with a fatigued energy level," and that his "quality is mostly appropriate but he relates feelings and moderate symptoms of anxiety and depression." AR 1049. Nevertheless, Dr. Flynn observed that Plaintiff maintained good eye contact and attention span, and was both friendly and able to follow directions. His thought processes appeared organized, logical, and normal, and he denied hallucination and thoughts of suicide. AR 1451. Furthermore, Dr. Flynn opined that Plaintiff's "impulse control seems intact," and although his "insight seems mildly impaired," she believed that his "reasoning appears to be at the concrete level." AR 1049. Ultimately, while ALJ Farris discounted Dr. Flynn's opinion with little explanation, she nonetheless described the examination as "thorough and competent." AR 1446.

ALJ Farris then collectively weighed the opinions of the non-examining consultative physicians in Plaintiff's case, without mentioning any by name, and accorded them "great weight" to the extent they found that Plaintiff "retains the ability to perform the exertional requirements of sedentary work, with appropriate postural limitations." AR 1459. She adopted the same anonymous, collective approach toward the non-examining consultative psychologists - including Dr. Carol Mohney, Ph.D. - assigning their opinions "significant weight" with "regard to the nature and severity of [Plaintiff's] mental impairments and functioning." AR 1459. She reflected that "[t]he consultants found that [Plaintiff's] mental impairments were severe, but that he had mild restriction[s] in activities of daily living; moderate difficulties in social functioning; mild difficulties with regard to concentration, persistence or pace; and no episodes of decompensation, under the 'B criteria.'" AR 1459. ALJ Farris explained that she "accept[ed] those findings," but stressed that she did "not accept the limitation to simple work." AR 1459. The substantiation she provided for discounting the limitation to simple work forms the second component of the instant appeal, and along with Dr. Vigil's opinion, will be scrutinized in detail below. *See infra* pp. 23-30.

In the second phase of step four, ALJ Farris identified past relevant work as a janitorial supervisor, commercial/institutional cleaner, and tow truck operator. AR 1460. Then, at the third and final phase of step four, ALJ Farris found that Plaintiff's RFC ruled out his return to any of these lines of work. AR 1460. Accordingly, ALJ Farris proceeded to step five. AR 1460. Based on Plaintiff's age, education, work experience, and RFC, ALJ Farris found that Plaintiff could perform other jobs that exist in significant numbers in the national economy. AR 1460-61. As described by the VE, these jobs included stuffer, DOT # 731.685-014, addresser, DOT # 209.587-010, and document preparer, DOT # 249.587-018. AR 1461. Finally, ALJ Farris

concluded that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period and she denied the claim. AR 1461.

## V. ANALYSIS

Plaintiff is no stranger to judicial review. The Court appreciates and is cognizant of his decade-long battle to secure benefits from the SSA and the multiple interim successes he has already achieved on appeal. But here, on his third appeal to the U.S. District Court, Plaintiff presents only the following three allegations of error: (1) that ALJ Farris violated the mandate rule; (2) that ALJ Farris failed to properly evaluate the opinion of Dr. Vigil; and (3) that ALJ Farris ignored the findings of Dr. Mohney. *See* Pl.'s Mot. 16-26. And upon closer scrutiny, these three issues present as one larger, interrelated argument. In fact, by analyzing the merits of Plaintiff's first claim - which essentially asserts that ALJ Farris violated the mandate rule by erring in the manner described in claims two and three - the merits of his second and third claims are necessarily exposed. And, unfortunately for Plaintiff, the latter two allegations are as bereft of support as the first. Thus, although it does so reluctantly, the Court must conclude that Plaintiff has failed to identify reversible error in ALJ Farris's 2016 decision. The Court's reasoning follows below.

### A. ALJ Farris Complied With the Mandate Rule and Supported Her Finding on Dr. Vigil's Opinion With Substantial Evidence

Plaintiff's first claim is best understood in context. On March 18, 2015, Judge Lynch issued a final order in Plaintiff's second judicial appeal. *See* Order, Mar. 18, 2015, ECF No. 24, 14-CV-346-WPL (also located at AR 1504-17). Therein, Judge Lynch reversed and remanded ALJ Farris's decision of December 12, 2013 [*see* AR 337-51], finding that ALJ Farris had "erred at step four by failing to properly evaluate Dr. Mohney's opinion and failing to support with substantial evidence her treatment of Dr. Vigil's opinion." AR 1517. Judge Lynch also ordered

that "[o]n remand, the ALJ will address all medical source opinions under the guidelines in 20 C.F.R. §§ 404.1527(c), 416.927(c), and any applicable SSRs." AR 1517. The order ended with two final instructions:

> (1) I remand this case to the ALJ at step four to examine the record and compare Dr. Vigil's opinion to the findings of Dr. Mallory and others.
>
> (2) The ALJ is instructed to re-evaluate Dr. Mohney's opinion on remand and either include in the RFC limitations on [Plaintiff's] ability to remember and understand detailed instructions and to perform at a consistent pace or provide reasons as to why the opinion is rejected on those points.

AR 1516-17.

Upon remand in 2016, ALJ Farris again found that Plaintiff was not disabled for purposes of the Social Security Act ("the Act"). AR 1461. Moreover, she found that Plaintiff had the residual functional capacity ("RFC") to do the following:

> [S]edentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he can occasionally climb stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, and kneel; never crouch or crawl; and have no more than occasional superficial, interaction with the public and coworkers.

AR 1452.

### 1. The "mandate rule"

Plaintiff challenges ALJ Farris's 2016 decision on the basis that it violated "the mandate rule." *See* Pl.'s Mot. 16-18. He makes two assertions, although he offers record support for only one. The first assertion, for which he offers citations to the record, is that despite being ordered to examine the record and compare Dr. Vigil's opinion to the findings of Dr. Mallory and others, ALJ Farris again "ignored the record demonstrating that [Plaintiff] was found to have antalgic gait and/or positive straight leg raise in other physical exams." Pl.'s Mot. 17 (citing AR 253, 255, 284, 294, 297, 300, 302, 306, 783, 810, 814, 833, 997, 1458-59). The second is that despite being ordered to reevaluate the opinion of Dr. Mohney and either include Dr. Mohney's two

moderate limitations or provide reasons why they should be rejected, "ALJ Farris did not follow the Court['] instructions nor did she provide any reasons that would meet the exceptional circumstances requirement." *Id.* at 16 (internal emphasis and quotation marks omitted). In neither instance does Plaintiff cite to authority to explain the application of the mandate rule.

For her part, the Commissioner curiously ignores the mandate rule altogether in her Response. *See* Def.'s Resp. 1-13, ECF No. 18.

### a. Mandate rule standard

The mandate rule is a corollary of the law-of-the-case doctrine and requires a court to "comply strictly with the mandate rendered by the reviewing court." *Huffman v. Saul Holdings Ltd. Partnership,* 262 F.3d 1128, 1132 (10th Cir. 2001). The Tenth Circuit holds that only "three exceptionally narrow" grounds exist to depart from the mandate rule. *Grigsby v. Barnhart,* 294 F.3d 1215, 1219 n.4 (10th Cir. 2002). These include:

> (1) When the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice.

*Id.* (citations omitted).

Although the mandate rule typically concerns higher and lower courts, it may also apply to courts and administrative agencies. *Padilla-Caldera v. Holder,* 637 F.3d 1140, 1145 (10th Cir. 2011), *as corrected* (Mar. 22, 2011). The rule "requires the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart." *Grigsby,* 294 F.3d at 1218 (quoting *Wilder v. Apfel,* 153 F.3d 799, 803 (7th Cir. 1998); citing *Brachtel v. Apfel,* 132 F.3d 417, 419-20 (8th Cir. 1997)). "Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."

*Sullivan v. Hudson,* 490 U.S. 877, 886 (1989). This rule pertains whether the district court decided an issue directly or by necessary implication. *Poppa v. Astrue,* 569 F.3d 1167, 1170 (10th Cir. 2009).

### 2. ALJ Farris's 2013 and 2016 findings

In December 2013, ALJ Farris weighed Dr. Vigil's medical opinion and found as follows:

> I give little weight to the opinion of John R. Vigil, M.D., who performed a consultative examination of [Plaintiff] on September 12, 2013, at the request of the [Plaintiff's] attorney (Ex. 18F). It is not clear why a consultative examination and opinion would be necessary[,] [w]hen long time treating pain management physician Dr. Mallory was seeing [Plaintiff] on a regular basis. It would seem that Dr. Mallory would have been a more appropriate choice to complete the detailed medical source statement forms that were instead obtained from Dr. Vigil (Ex. 19F). Dr. Vigil made findings at his one[-]time examination, such as antalgic gait and positive straight leg raising bilaterally, that are inconsistent with Dr. Mallory's findings over many visits (See, e.g. Ex. 13F/11). Dr. Vigil also indicated that [Plaintiff] complained of "daily and constant pain in the neck, low back, bilateral shoulders right greater than left, bilateral knees, left greater than right, both hands, and right ankle and foot," even though extensive treatment records document only complaints of back and related radicular pain (Ex. 18F/4). Furthermore, Dr. Vigil's report and the forms completed after the examination contain inconsistencies. For example, Dr. Vigil indicated that [Plaintiff] could lift less than 10 pounds occasionally, even though [Plaintiff] told him that he was able to lift 15 to 20 pounds (Ex. 18F/4 and Ex. 19F/1). Most notably, Dr. Vigil stated that "it is my opinion that within a reasonable medical probability that this patient is totally and completely disabled secondary to his chronic pain and co-morbid psychiatric conditions," but in the next sentence contradicted himself, stating "[i]t is my opinion that [Plaintiff's] disabilities, including his chronic pain preclude him from performing anything more than sedentary work on a full-time and sustained basis from at least 2009[.]" (Ex. 18F/7).

AR 348. Plaintiff appealed ALJ Farris's finding on multiple grounds, one of which contended that her evaluation of Dr. Vigil's opinion was both legally erroneous and unsupported by substantial evidence. *See* AR 1514.

Judge Lynch agreed with Plaintiff, and in his Order of March 18, 2015, opined as follows:

As support for her determination to accord Dr. Vigil's opinion little weight, the ALJ stated that Dr. Vigil's findings of antalgic gait and a positive straight leg raise test were inconsistent with Dr. Mallory's findings. AR 348. The ALJ pointed to a February 18, 2013, note from Dr. Mallory. The note stated that [Plaintiff] continued to have positive facet loading signs and diminished range of motion, as well as point tenderness at the base of the lumbar spine, but made no mention of antalgic gait or a straight leg raise test. AR 1063.

The ALJ did not address the numerous visits at which Dr. Mallory noted an antalgic gait, a positive straight leg raise test, or both, including May 12, June 28, and July 23, 2008, and January 14, February 11, March 25, April 22, May 20, and June 18, 2009. AR 253, 255, 284, 294, 297, 300, 302, 306, 997. This does not take into account the appointments with other providers during which [Plaintiff] exhibited an antalgic gait, positive straight leg raise test, positive facet loading signs, or decreased range of motion. *See, e.g.,* AR 783, 810, 814, 818, 833. The scintilla of evidence pointed to by the ALJ to support her conclusion that Dr. Vigil's findings were inconsistent with Dr. Mallory's findings is overwhelmed by the evidence of record. Therefore, I conclude that this finding is not supported by substantial evidence. *See Wall,* 561 F.3d at 1052 (explaining that "substantial evidence" requires evidence that a reasonable person might accept as sufficient to support a conclusion).

Additionally, the ALJ states that Dr. Vigil's opinion is internally inconsistent because he writes that [Plaintiff] is completely and totally disabled, and then writes that [Plaintiff's] disabilities prevented him from performing more than sedentary work since at least 2009. AR 348. [Plaintiff] concedes that the opinion may be internally inconsistent, but argues that this is not a sufficient basis for rejecting Dr. Vigil's opinion. As [Plaintiff] points to no legal authority for this proposition, I do not review it.

The ALJ failed to support her analysis of Dr. Vigil's opinion by substantial evidence. Therefore, I remand this case to the ALJ at step four to examine the record and compare Dr. Vigil's opinion to the findings of Dr. Mallory and others. *See Hamlin,* 365 F.3d at 1214 (allowing remand when the ALJ fails to support the decision with substantial evidence).[8]

AR 1514-16. Notably, Judge Lynch specifically directed the SSA, upon remand, "to examine the record and compare Dr. Vigil's opinion to the findings of Dr. Mallory and others." AR 1516.

Following Judge Lynch's Order, the SSA again assigned Plaintiff's case to ALJ Farris, who then had a second opportunity to weigh Dr. Vigil's opinion. ALJ Farris's 2016 evaluation follows below, with alterations from her prior (2013) opinion appearing in bold:

---

[8] All citations to the record in Judge Lynch's 2015 opinion correspond to the record as it existed during that appeal.

I give little weight to the opinion of John R. Vigil, M.D., who performed a consultative examination of [Plaintiff] on September 12, 2013, at the request of [Plaintiff's] attorney (Ex. l8F). It is not clear why a consultative examination and opinion would he necessary, when long time treating pain management physician Dr. Mallory was seeing [Plaintiff] on a regular basis. It would seem that Dr. Mallory would have been a more appropriate choice to complete the detailed medical source statement forms that were instead obtained from Dr. Vigil (Ex. 19F). Dr. Vigil made findings at his one[-]time examination, such as antalgic gait and positive straight leg raising bilaterally, **that are inconsistent with Dr. Mallory's and Dr. Dole's findings at visits in the months immediately before and after. On February 18, 2013, Dr. Mallory reported continued positive facet loading signs with diminished range of motion and lateral flexion and point tenderness at the base of the lumbar spine consistent with L5-Sl region (Ex. 13F/l l). Dr. Mallory did not report antalgic gait or positive straight leg raising. On June 24, 2013, Dr. Mallory again reported continued positive facet loading signs with diminished range of motion and lateral flexion and point tenderness at the base of the lumbar spine consistent with L5-Sl region (Ex. 20F/27). Again, Dr. Mallory did not report antalgic gait or positive straight leg raising. On August 19, 2013, Dr. Dole reported that the [Plaintiff] rose from sitting to standing position and walked out of the exam room without significant apparent discomfort (Ex. 20F/38). On September 16, 2013, Dr. Dole again noted that the [Plaintiff] was able to rise from sitting to standing position and walk out of the exam room without significant apparent discomfort (Ex. 20F/17). [Plaintiff] did not keep or call to cancel his appointment with pain management specialist Dr. Hager on September 26, 2013, which is inconsistent with the level of pain he was alleging at his visit to Dr. Vigil earlier the same month (Ex. 20F/10). When he did keep his appointment with Dr. Hager on January 16, 2014, Dr. Hager reported stable and balanced station, with mildly antalgic gait (Ex. 21F/16).** Dr. Vigil also indicated that [Plaintiff] complained of "daily and constant pain in the neck, low back, bilateral shoulders right greater than left, bilateral knees, left greater than right, both hands, and right ankle and foot" even though extensive treatment records document only complaints of back and related radicular pain (Ex. 18F/4). Furthermore, Dr. Vigil's report and the forms completed after the examination contain inconsistencies. For example, Dr. Vigil indicated that [Plaintiff] could lift less than 10 pounds occasionally, even though [Plaintiff] told him that he was able to lift 15 to 20 pounds (Exs. 18F/4 and 19F/1). Most notably, Dr. Vigil stated that "it is my opinion that within a reasonable medical probability that this patient is totally and completely disabled secondary to his chronic pain and co-morbid psychiatric conditions," but in the next sentence contradicted himself, stating "[i]t is my opinion that [Plaintiff's] disabilities, including his chronic pain preclude him from performing anything more than sedentary work on a full-time and sustained basis from at least 2009[.]" (Ex. 18F/7).

AR 1458-59.

### 3. ALJ Farris complied with the mandate rule and supported her findings with substantial evidence

The first question the Court must answer is whether ALJ Farris complied with the mandates issued by Judge Lynch in 2015. AR 1516. But as mentioned previously, the process of evaluating Plaintiff's first claim challenge lends itself to answering Plaintiff's second. Therefore, this section will address this portion of Plaintiff's first claim - as to whether ALJ violated the mandate rule in her treatment of Dr. Vigil's opinion - and the entirety of Plaintiff's second claim in sequence.

The directives handed down by Judge Lynch in his 2015 Order were unambiguous. Upon remand, the ALJ assigned to Plaintiff's case was ordered to "address all medical source opinions under the guidelines in 20 C.F.R. §§ 404.1527(c), 416.927(c), and any applicable [Social Security Rulings ("SSRs")]." AR 1518. Judge Lynch further ordered the ALJ to examine the record and compare Dr. Vigil's opinion to the findings of Dr. Mallory and others. AR 1516. ALJ Farris did both.

Under SSA regulations, an ALJ is required to evaluate every medical opinion in the record, giving varying weight to each opinion "according to the relationship between the disability claimant and the medical professional." *Hamlin*, 365 F.3d at 1215. Generally, the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining consultant is given the least weight. *Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004). In deciding how much weight to give any source's opinion, the ALJ must consider the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, whether the opinion is supported by objective medical evidence, and whether the opinion is consistent with the record as a whole. 20 C.F.R. § 416.927(c)(1)-(6) (2016). An ALJ need not explicitly discuss every single factor. *Oldham v.*

*Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, the ALJ must "give good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight" she gave to the opinion "and the reasons for that weight." SSR 96-2P, 1996 WL 374188 at *5 (July 2, 1996). Stated plainly, the reasons must be sufficiently specific to permit meaningful review. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

SSR 96-6p also provides specific guidance on how to consider opinions of consultative examiners, including opinions of psychological consultants. SSR 96-6p, 1996 WL 374180 (July 2, 1996). Specifically, it directs that findings of fact made by a consultative examiner "must be treated as expert opinion evidence of nonexamining sources." *Id.* at *1. ALJs may not ignore these opinions and must explain the weight given to these opinions. *Id.* at *2. Yet, because opinions of consultative examiners are not accorded the same value as treating sources, SSR 96-6p mandates as follows:

> the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.

*Id.*

Based on relevant regulations and rulings, this Court finds no error in ALJ Farris's 2016 evaluation of the opinion of Dr. Vigil. SSR 96-6p makes clear that an ALJ must explain the weight given to a consultative examiner's opinion. In this case, ALJ Farris did exactly that; she assigned little weight to Dr. Vigil's opinion and articulated her reasons for doing so. AR 1458-59. Through that process, ALJ Farris further obeyed agency regulations, *see* SSR 96-6p, 1996

WL 374180, at *2 (an ALJ must consider supportability and consistency of a consultative opinion), while simultaneously complying with Judge Lynch's mandate that she compare Dr. Vigil's opinion to the findings of Dr. Mallory and others. *See* AR 1516, 1458-59.

ALJ Farris compared Dr. Vigil's findings with the findings of no less than three other medical professionals. First, ALJ Farris compared Dr. Vigil's opinion, based on his singular experience with Plaintiff, with the observations made by both Dr. Mallory and Dr. Dole in the months before and after Dr. Vigil's consultation. AR 1458. Although Dr. Vigil had observed antalgic gait and positive straight leg raising bilaterally in September 2013, ALJ Farris noted that in February and June 2013, Dr. Mallory, Plaintiff's treating physician, made no mention of antalgic gait or positive straight leg raising. AR 1458. Additionally, ALJ Farris recounted that on August 19, 2013 (four weeks prior to the consultation with Dr. Vigil) and on September 16, 2013 (four days after the consultation with Dr. Vigil), Dr. Ernest Dole, Pharm.D. (who oversaw Plaintiff's prescription plan through the UNMH system) noted that Plaintiff was able to rise from a sitting to a standing position without significant discomfort. AR 1458-59. Lastly, ALJ Farris highlighted that on September 26, 2013 (just two weeks after the consultation with Dr. Vigil), Plaintiff neither kept nor called to cancel his pain management appointment with Dr. Hager, which ALJ Farris found to be "inconsistent with the level of pain he was alleging at his visit to Dr. Vigil the same month." AR 1459. Moreover, ALJ Farris noted that when Plaintiff did meet with Dr. Hager in January 2014, he presented with only a mildly antalgic gait. AR 1459.

Whether the Court would have evaluated Dr. Vigil's opinion differently if it were reviewing the evidence de novo is not the question. In this case, the Court is constrained to reviewing whether: (1) ALJ Farris complied with Judge Lynch's mandate in reviewing Dr. Vigil's opinion; (2) whether she erred as a matter of law in her treatment of Dr. Vigil's opinion;

and (3) whether her evaluation of Dr. Vigil's opinion is supported by substantial evidence. The Court finds that ALJ Farris obeyed the mandate issued by Judge Lynch in 2015 by basing her second evaluation of Dr. Vigil's opinion on regulatory and agency norms, and by comparing his opinion to other portions of the record as required by Judge Lynch's Order. *See* AR 1516, 1458-59. Further, ALJ Farris supported her evaluation in the manner prescribed by SSR 96-6p, thereby mitigating any allegation of legal error. S*ee* SSR 96-6p, 1996 WL 374180, at *2 (an ALJ must consider supportability and consistency of a consultative opinion).

Finally, the Court finds that, unlike the evaluation that Judge Lynch considered in 2015, ALJ Farris's 2016 evaluation of Dr. Vigil's opinion is supported by substantial evidence. In making this finding, the Court remains mindful that it is not the proper role of this Court to substitute its judgment for that of an ALJ. When "reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). An ALJ's factual findings at the administrative level are conclusive "if supported by substantial evidence," 42 U.S.C. § 405(g), which precedent defines as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. Under this relatively generous and deferential evidentiary standard, the Court finds that ALJ Farris supported her evaluation of Dr. Vigil's opinion with substantial evidence, although the Court cannot say it would make the same finding if it were allowed to weigh the evidence in the first instance. But that exercise is not the province of this Court, and mindful of the standard of review, the Court must deny Plaintiff's second allegation of error along with his first, insofar as it concerns the opinion of Dr. Vigil.

### B. ALJ Farris Complied With the Mandate Rule and Supported Her Finding on Dr. Mohney's Opinion With Substantial Evidence

Plaintiff next contends that ALJ Farris erred by ignoring Judge Lynch's directives regarding Dr. Mohney's opinion. He explains that Judge Lynch "ordered the Commissioner to 're-evaluate Dr. Mohney's opinion on remand and either include in the RFC limitations on [Plaintiff's] ability to remember and understand detailed instructions and to perform at a consistent pace or provide reasons as to why the opinion is rejected on those points.'" Pl.'s Mot. 17 (quoting AR 1517). By Plaintiff's account, "ALJ Farris did not follow the Court's instructions nor she did provide any reasons that would meet the 'exceptional circumstances' requirement." *Id.* *See Grigsby*, 294 F.3d at 1219 n.4 (explaining the three exceptional circumstances that justify departing from the mandate rule).

Plaintiff expands this argument into his third claim, where he specifically claims that ALJ Farris failed to incorporate Dr. Mohney's recommended limitations "regarding ability to remember and understand detailed instructions[,][ ] ability to complete a normal workday and workweek without interruptions from psychologically based symptoms[,] and [ability to] perform at a consistent pace without an unreasonable number and length of rest periods." Pl.'s Mot 25. Plaintiff argues, without citation, that "ALJ Farris did not provide an explanation as to why she did not do so." *Id.*

The Commissioner responds in two ways. First, she contends that the limitations cited by Plaintiff "are not part of Dr. Mohney's formal opinion." Def.'s Resp. 10. She reasons that the Mental Residual Functional Capacity Assessment ("MRFCA") completed by Dr. Mohney specifically stated that the notation section of the MRFCA from which Plaintiff interprets these additional limitations should not be read as describing an RFC. Rather, the Commissioner cites to the plain language of the MRFCA form itself, which states that "the actual mental [RFC]

assessment is recorded in the narrative discussions." *Id.* (quoting AR 473). The Commissioner further cites to the Program Operation Manual System ("POMS") and an unpublished Tenth Circuit case for the notion that Dr. Mohney's opinion on Plaintiff's functioning "is contained in the 'Additional Explanation' Section (formerly known as Section III) of the MRFCA form." *Id.* at 10-11 (citing POMS § 25020.010(B)(2); *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished)).

The Commissioner next directs the Court to the narrative section of the MRFCA, where Dr. Mohney opined that Plaintiff "can under[stand], remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors and respond appropriately to changes in a work setting." AR 475; *see* Def.'s Resp. 11. The Commissioner explains that ALJ Farris "ultimately found that the record did not support limiting Plaintiff to simple work, but that Plaintiff was limited to no more than occasional, superficial interaction with the public and co-workers." Def.'s Resp. 11 (citing AR 1452). Thus, the Commissioner concludes, "the ALJ's RFC assessment adequately accounted for the functional limitations of Plaintiff's moderate nonexertional impairments, with the exception of Plaintiff's moderate limitation in the ability to understand and remember detailed instructions which the ALJ did not accept, given that the ALJ found that Plaintiff was not limited to simple work." *Id.* (citing *Smith v. Colvin*, 821 F.3d 1264, 1268 69 (10th Cir. 2016)) (additional citations omitted).

### 1. Dr. Mohney's opinion

As a non-examining consultative psychologist, Dr. Mohney reviewed Plaintiff's medical history on behalf of the SSA and completed a Psychiatric Review Technique ("PRT") documenting the severity of Plaintiff's mental impairments on June 13, 2013. AR 468-70. As

part of the PRT, she assessed Plaintiff's mental impairments under the "paragraph B" criteria of Listings 12.04, 12.06, [9] and 12.09[10] and found insufficient evidence of restriction of activities of daily living, moderate difficulties in maintaining social functioning, and only mild difficulties in maintaining concentration, persistence and pace. AR 469.

Dr. Mohney contemporaneously completed Plaintiff's MRFCA. In the summary conclusions section,[11] Dr. Mohney opined that Plaintiff was moderately limited in the following four categories:

> (1) The ability to interact appropriately with the general public;
> (2) The ability to understand and remember detailed instructions;
> (3) The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and
> (4) The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

AR 473-74. Then in "MRFC – Additional Explanation"[12] narrative, Dr. Mohney concluded that Plaintiff "can under[stand], remember, and carry out simple instructions, make simple decisions,

---

[9] *See supra*, note 7.

[10] *See supra*, note 6.

[11] To document their evaluations, SSA psychological consultants ("PCs") complete their medical assessment forms in the electronic Claims Analysis Tool ("eCAT"). POMS § 24501.002(c). These forms include, among others, the Psychiatric Review Technique, the Physical Residual Functional Capacity Assessment, the Mental Residual Functional Capacity Assessment (Form SSA-4734-F4-SUP), and the Medical Evaluation. *Id.* As its name suggests, the Mental RFC Assessment form is used by a PC in evaluating and documenting a plaintiff's mental RFC. *Id.* § 24510.060(A)(1). The Mental RFC Assessment form is divided into four sections: (1) Heading; (2) Section I, Summary Conclusions; (3) Section II, Remarks; and (4) Section III, Functional Capacity Assessment and MC Signature. *Id.* § 24510.050(B). According to both the SSA and the Tenth Circuit, "Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." *Id.* § 24510.060(B)(2); *see Smith v. Colvin*, 821 F.3d 1264, 1269 n.2 (10th Cir. 2016) ("Dr. Frommelt's notations of moderate limitations served only as an aid to her assessment of [RFC]. We compare the [ALJ's] findings to Dr. Frommelt's opinion on [RFC], not her notations of moderate limitations."). Section II provides an opportunity for the PC to discuss the evidence needed to rate the limitations in Section I. POMS § 24510.060(B)(3). Section III is where the mental RFC assessment should be recorded, "*explaining the conclusions indicated in section I*, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id.* § 24510.060(B)(4) (emphasis added).

[12] The Commissioner argues that this "MRFC – Additional Explanation" section corresponds to the Section III portion of the old MRFCA form used by the SSA. Def.'s Resp. 10-11, ECF No. 18. The Court need not decide that

attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors and respond appropriately to changes in a work setting." AR 475.

### 2. ALJ Farris's 2013 and 2016 findings

In ALJ Farris's 2013 opinion, she made no mention of Dr. Mohney. But when discussing the medical opinions concerning Plaintiff's mental limitations, ALJ Farris did state the following:

> With regard to the nature and severity of [Plaintiff's] mental impairments and functioning, I give significant weight to the opinions of the nonexamining state agency consultants. The consultants found that [Plaintiff's] mental impairments were severe, but that he had mild restriction in activities of daily living; moderate difficulties in social functioning; mild difficulties with regard to concentration, persistence or pace; and no episodes of decompensation, under the "B criteria" (Ex. 9A, Ex. 10A, and Ex. 14F). Given the finding of only mild difficulties with regard to concentration, persistence or pace, and Dr. Flynn's findings on mental status examination, I do not accept the limitation to simple work.

AR 349.

> On judicial review, Judge Lynch found as follows:

> The ALJ gave "significant weight to the opinions of the nonexamining state agency [psychological] consultants," and adopted into the RFC Dr. Mohney's limitation on [Plaintiff's] ability to interact with co-workers and the public, but did not adopt Dr. Mohney's limitations on [Plaintiff's] ability to remember and understand detailed instructions or to perform at a consistent pace. AR 349. The ALJ references a "finding of only mild difficulties with regard to concentration, persistence or pace, and Dr. Flynn's findings on mental status examination" as reasons to not limit [Plaintiff] to simple work. *Id.* It is unclear who made the "finding of only mild difficultie[s]" and Dr. Flynn did not make a finding as to [Plaintiff's] ability to maintain concentration, persistence or pace, *see* AR 1049, though Dr. Mohney found [Plaintiff] to be "moderately limited" in this regard. AR 474.

> The ALJ must explain the weight assigned to medical opinions and must consider the factors in 20 C.F.R. §§ 404.1527(c), 416.927(c), when evaluating medical opinions. *See Quintero v. Colvin,* 567 F. App'x 616, 619 (10th Cir. 2014)

---

issue, as it is obvious here that the "MRFC – Additional Explanation" served the function of the traditional Section III narrative. *See* AR 475.

(unpublished). When the ALJ fails to properly evaluate medical source opinions, the case must be remanded. *Id.* at 621.

> The ALJ failed to explain why she disregarded this limitation in the RFC. Without an explanation as to why the ALJ disregarded Dr. Mohney's limitations in the RFC, I must conclude that the ALJ failed to properly evaluate Dr. Mohney's opinion under 20 C.F.R. §§ 404.1527(c), 416.927(c), and SSR 96-8p. Therefore, the ALJ is instructed to re-evaluate Dr. Mohney's opinion on remand and either include in the RFC limitations on [Plaintiff's] ability to remember and understand detailed instructions and to perform at a consistent pace or provide reasons as to why the opinion is rejected on those points.

AR 1516-17.

Following Judge Lynch's remand, ALJ Farris re-analyzed the opinion of Dr. Mohney and the other non-examining physicians and opined as follows (new text appears in bold):

> With regard to the nature and severity of [Plaintiff's] mental impairments and functioning, I give significant weight to the opinions of the nonexamining state agency consultants. The consultants found that [Plaintiff's] mental impairments were severe, but that he had mild restriction in activities of daily living; moderate difficulties in social functioning; mild difficulties with regard to concentration, persistence or pace; and no episodes of decompensation, under the "B criteria" (Ex. 9A, Ex. 10A, and Ex. 14F). **I accept those findings, but** I do not accept the limitation to simple work. The finding of only mild difficulties with regard to concentration, persistence or pace, **does not support the limitation to simple work, nor does** Dr. Flynn's findings on mental status examination. **Dr. Flynn reported that [Plaintiff's] attention appeared steady (Ex. 11F/4). Dr. Flynn noted [Plaintiff] did not show any signs of receptive or expressive aphasia and was able to follow directions. Dr. Flynn further reported [Plaintiff's] thought processes were organized and logical, and his thought content appeared normal. Dr. Flynn further reported [Plaintiff's] short term and long term memory seemed intact. He did serial sevens quickly and in his head. He had a reasonable fund of general knowledge. In addition, treating psychiatrist Dr. Hager, who examined [Plaintiff] in January 2014, reported that cognition was with adequate conversational orientation, attention, concentration, recent autobiographical recall, and language for interview (Ex. 21F/6). These mental status findings do not support a limit[ation] to simple work.**

AR 1459.

### 3. ALJ Farris complied with the mandate rule and did not ignore Dr. Mohney's opinion

The Court finds that ALJ Farris complied with Judge Lynch's directives concerning the opinion of Dr. Mohney. In his 2015 Order, Judge Lynch ordered the reviewing ALJ to "address all medical source opinions under the guidelines in 20 C.F.R. §§ 404.1527(c), 416.927(c), and any applicable [Social Security Rulings ("SSRs")]." AR 1518. Judge Lynch further instructed the ALJ "to re-evaluate Dr. Mohney's opinion on remand and either include in the RFC limitations on [Plaintiff's] ability to remember and understand detailed instructions and to perform at a consistent pace or provide reasons as to why the opinion is rejected on those points." AR 1517. Here again, ALJ Farris complied in both respects.

Judge Lynch offered the SSA two options on remand: adopt Dr. Mohney's moderate limitations, or reject them and provide reasons. *See* AR 1517. ALJ Farris chose the latter. This is not to say she did not do so with a degree of nuance. Indeed, she accepted and accorded significant weight to Dr. Mohney's opinion, but only with respect to her PRT findings, which reflected, in relevant part, that Plaintiff had moderate difficulties in social functioning, and only *mild difficulties* with regard to concentration, persistence, and pace. AR 1459; *see* AR 469. To the extent Dr. Mohney recommended in her MRFCA narrative that Plaintiff can only "under[stand], remember, and carry out simple instructions, make simple decisions, [and] attend and concentrate for two hours at a time," AR 475, ALJ Farris made clear she did "not accept" her opinion or its limitations. AR 1459. Correspondingly, ALJ Farris also rejected the summary moderate limitations identified by Dr. Mohney, including: (1) the ability to understand and remember detailed instructions; and (2) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. AR 473-74.

Furthermore, ALJ Farris heeded the directive issued by Judge Lynch and looked to other medical evidence in the record to provide reasons for her decision. ALJ Farris first turned to the consultative examination of Dr. Flynn, who reported that Plaintiff's attention was steady and that he was able to follow directions. AR 1459 (citing AR 1049). She also cited Dr. Flynn's findings that Plaintiff's thought processes and content seemed organized, logical and normal, that his short term memory seemed intact, that he could perform serial sevens quickly, and that he had a reasonable fund of general knowledge. AR 1459. ALJ Farris then recounted Dr. Hager's January 2014 findings, which reflected that Plaintiff had "adequate conversational orientation, attention, concentration, recent autobiographical recall, and language for [his] interview." AR 1459 (citing AR 1633). Ultimately, ALJ Farris concluded the findings contained in these two reports "do not support [Dr. Mohney's] limit[ation] to simple work." AR 1459.

ALJ Farris's rejection of Dr. Mohney's moderate limitations also reflects an adherence to agency regulations and governing case law. Her stated rationale constitutes "good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight" she gave to the opinion "and the reasons for that weight." SSR 96-2P, 1996 WL 374188 at *5 (July 2, 1996). Despite Plaintiff's assertion that ALJ Farris "ignored" the findings of Dr. Mohney, the record reflects that she weighed the opinion consistent with the precepts of SSR 96-6p, and discounted the two moderate limitations in question for lack of supportability and inconsistency with other medical opinions in the record. AR 1459; *see* SSR 96-6p, 1996 WL 374180, at *2 (an ALJ must consider supportability and consistency of a consultative opinion). In doing so, ALJ Farris simultaneously complied with Judge Lynch's remand order, while avoiding legal error and supporting her opinion with substantial evidence. As a consequence, the Court must deny the remainder of Plaintiff's first claim as well as his third.

## VI. CONCLUSION

For the reasons articulated above, the Court holds that the ALJ's decision was supported by substantial evidence and the ALJ correctly applied the proper legal standards.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum [ECF No. 16] is **DENIED.**

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **AFFIRMED** and that the instant cause be **DISMISSED.**

**IT IS SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***